UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SCOTT B. HERSEY,

      Petitioner,

v.                                      CASE NO. 6:09-cv-71-Orl-31DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

      Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section

2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to

show cause why the relief sought in the petition should not be granted.  Thereafter,

Respondents filed a response and a supplemental response to the petition for writ of

habeas corpus in compliance with this Court's instructions and with the *Rules Governing*

*Section 2254 Cases in the United States District Courts* (Doc. Nos. 7 & 12).  Petitioner filed a

reply and a supplemental reply to the response and supplemental response (Doc. Nos. 10

& 13).

      Petitioner alleges five claims for relief in his habeas petition: (1) the prosecutor

falsely represented the terms of Petitioner's co-defendant's plea agreement and allowed

the co-defendant to falsely testify about his plea agreement (claim one), (2) trial counsel

rendered ineffective assistance by failing to ensure that his co-defendant's false testimony

regarding his plea agreement was corrected (claim two), (3) trial counsel rendered ineffective assistance by failing to object to hearsay testimony from a law enforcement officer (claim three), (4) trial counsel rendered ineffective assistance by failing to move to suppress Petitioner's statement to law enforcement in violation of *Miranda*[1] (claim four), and (5) trial counsel rendered ineffective assistance by failing to request the standard "accomplice testimony" jury instruction (claim five). For the following reasons, the petition is denied.

## I. Procedural History

Petitioner was charged by amended information with robbery with a deadly weapon (count one), aggravated battery (count two), and aggravated assault (count three). A jury trial was conducted, and Petitioner was found guilty as charged. The state trial court sentenced Petitioner to life in prison for count one and to concurrent sixteen-year terms of imprisonment as to counts two and three. Petitioner appealed his convictions and sentences, and he also filed in the trial court a motion to correct sentence pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure. The Fifth District Court of Appeal of Florida subsequently affirmed.[2]

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] However, the Fifth District court of Appeal of Florida granted Petitioner's motion for certification to the Supreme Court of Florida. Petitioner filed a notice to invoke the discretionary jurisdiction of the Supreme Court of Florida, which stayed the case pending resolution of two other cases dealing with a similar issue. Thereafter, the Supreme Court of Florida held that the Fifth Circuit Court of Appeal's holding that Petitioner's sentence was valid did not warrant a remand.

Petitioner filed a state petition for writ of habeas corpus. The Fifth District Court of Appeal denied the petition.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and a second Rule 3.850 motion. The state court denied the motions. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the

clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and

(2) whether the deficient performance prejudiced the defense.[3]  *Id.* at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

### III.    Analysis

#### A.    Claim One

Petitioner asserts that the prosecutor falsely represented the terms of Petitioner's co-defendant's plea agreement and allowed the co-defendant to falsely testify about his plea agreement.  Respondents argue that the claim is procedurally barred from review by this Court.

Pursuant to the AEDPA, federal courts are precluded, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)    (I)    there is an absence of available State corrective process; or
>
> (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In addition, a federal habeas court is precluded from

considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

The record in this case demonstrates that Petitioner raised claim one in his second Rule 3.850 motion, but the state court found the claim to be procedurally barred as it should have been raised on direct appeal. (App. FF at 2.) Petitioner argues that the state court did not dismiss his prosecutorial misconduct claim on adequate and independent procedural grounds because state law allows *Giglio*[4] claims to be raised in Rule 3.850 motions.

Contrary to Petitioner's argument, Florida courts do bar review of collateral claims of prosecutorial misconduct that are not raised on direct appeal. *E.g.*, *Bell v. State*, 2007 WL 1628143 *7 (Fla. Jun 7, 2007) (claim of prosecutorial misconduct "should have been raised on direct appeal and is procedurally barred"); *Lamarca v. State*, 931 So. 2d 838, 851 n.8 (Fla. 2006) (same). Thus, claim one is procedurally barred in this Court because the last state court rendering a judgment in Petitioner's case clearly and expressly stated that its judgment rested on the procedural bar. *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990) ("[P]er curiam affirmance of the trial court's ruling explicitly based on procedural

---

[4]*Giglio v. United States*, 405 U.S. 150 (1972).

7

default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal court."). Accordingly, the Court must deny this claim as procedurally barred unless Petitioner establishes one of the two exceptions to the procedural default rule.

First, a petitioner may overcome a procedural default by showing "both 'cause' for the default and actual 'prejudice' resulting from the default." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). The second exception, known as the "fundamental miscarriage of justice," only "occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.* In the present case, Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claim one is procedurally barred.

Alternatively, claim one would be denied on the merits if it were not procedurally barred. Under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), and *Giglio*, 405 U.S. at 154-55, a petitioner must demonstrate that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001) (quotations omitted). This rule covers not only inculpatory false testimony, but also falsehoods tending to enhance the credibility of a witness. *Napue*, 360 U.S. at 269. "[T]he falsehood is deemed

to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).).  Thus, a *Giglio* violation warrants habeas relief only when the petitioner demonstrates that there is any reasonable likliehood that the false testimony could have affected the jury's determination.

In the instant case, the record establishes that at trial, Petitioner's co-defendant, Bryan Huston ("Huston"), testified that he was with Petitioner when Petitioner committed the offenses and he observed Petitioner commit the offenses.  After Petitioner robbed the victim, Huston searched the victim's wallet and found his social security card which Huston then hid in the back passenger seat of Petitioner's vehicle.  Police subsequently found the victim's social security card in Petitioner's mother's vehicle.

Prior to Petitioner's trial, Huston entered into a plea agreement whereby he received a sentence of five-years imprisonment.  At trial, when asked if he had received any deals from the State in return for his testimony, Huston said that he had not.  On cross-examination Huston further indicated that he was not sure if his plea or his sentence could be rescinded if he failed to testify at Petitioner's trial.  Finally, during closing argument, the prosecutor argued that there was no evidence that Huston had received any deal for testifying against Petitioner.  Contrary to Huston's trial testimony and the prosecutor's statements, however, it appears that Huston received a five-year sentence based on his cooperation with the State and that Huston was warned at his plea hearing that if his testimony changed at Petitioner's trial, the State would seek to set aside Huston's plea and

sentence.

The Court finds, therefore, that Petitioner has demonstrated that the prosecutor knowingly used false testimony or failed to correct such testimony. However, Petitioner has not established that there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. First, Huston's testimony regarding the offenses was corroborated by the victim's social security card which was recovered from Petitioner's mother's vehicle. Second, the victim identified Petitioner as the perpetrator from a photographic lineup shortly after the incident. Finally, as discussed more fully in relation to claim two, defense counsel argued repeatedly during closing argument that Huston had secured a substantial deal of a five year sentence in return for testifying against Petitioner and counsel impeached Huston based on his prior convictions. Thus, Huston's credibility was substantially challenged. In light of the evidence presented, Petitioner has not demonstrated that there is any reasonable likelihood that Huston's testimony regarding his plea agreement could have affected the jury's judgment. *See, e.g., Ventura v. Attorney General, Fla.*, 419 F.3d 1269, 1292 (11th Cir. 2005) (holding "[t]he substantial volume of interlocking corroborating and impeachment evidence soundly supports the . . . conclusion that a jury would not have discounted [the witness'] testimony even if it knew he had been promised a deal on potential bond-jumping charges in exchange for his testimony, and thus that there was no reasonable likelihood that [his] false testimony could have affected the judgment of the jury."). Accordingly, this claim is procedurally barred and otherwise denied on the merits.

**B.    Claim Two**

Petitioner asserts that trial counsel rendered ineffective assistance by failing to ensure that the co-defendant's false testimony regarding his plea agreement was corrected. Petitioner raised this claim in his second Rule 3.850 motion. Applying *Strickland*, the state court denied relief. (App. FF at 3-4.)

The state court recognized that Huston indicated at trial that he was uncertain of whether his plea could be rescinded if he failed to testify and that he did not believe that he had received a five-year sentence in return for testifying against Petitioner. *Id.* at 3. The state court further noted that Huston testified that he did not think serving as a witness was the only reason he received a five-year sentence, but instead was also based on him turning himself into police and because he had not been in trouble previously. *Id.* Huston stated that his attorney had advised him that he was subject to a potential life sentence for the offenses. *Id.* at 3-4. The state court acknowledged that the prosecutor's closing argument was somewhat misleading concerning Huston's plea agreement. *Id.* at 4. Despite Huston's testimony and the prosecutor's statements, however, the state court determined that Petitioner failed to demonstrate either deficient performance or prejudice. *Id.* The state court reasoned that defense counsel challenged Huston's credibility based on his felony convictions and the five-year plea deal he received. *Id.*

As discussed *supra*, Huston seemingly provided misleading, if not false, testimony, and the prosecutor argued that Huston did not receive any type of deal based on his testimony against Petitioner. However, during cross-examination and in closing argument,

defense counsel impeached Huston's credibility by questioning him about his sentence and plea and about his felony convictions. Most importantly, however, there was additional evidence of Petitioner's guilt besides Huston's testimony, including the victim's identification of Petitioner as the perpetrator and the fact that the victim's social security card was found in Petitioner's mother's vehicle which was identified as the vehicle used during the incident. Accordingly, the Court concludes that the state court's denial of this claim is neither contrary to, nor an unreasonable application of, *Strickland*.

C.     *Claim Three*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to hearsay testimony from a law enforcement officer. Specifically, Petitioner argues that counsel failed to object when Detective Edward Schafer affirmed that the victim was confident that Petitioner's photograph portrayed the perpetrator.

Petitioner raised this claim in his second Rule 3.850 motion, and the state court denied relief pursuant to *Strickland*. (App. FF at 4-5.) The state court reasoned that the victim testified that although he could not identify Petitioner at trial,[5] the victim observed the perpetrator close up at the time of the incident and identified Petitioner from a photo lineup shortly after the incident. *Id*. at 5. The state court noted that Detective Schafer's statements were not a prominent feature of the trial and had counsel objected to his statements, Detective Schafer's testimony would have been highlighted for the jury's

---

[5]According to testimony presented at trial, Petitioner's appearance had changed substantially from the time of the incident. Specifically, Petitioner had gained approximately fifty to sixty pounds and his hair was different.

consideration. *Id.*

Petitioner has failed to demonstrate that the state court's determination is contrary to, or an unreasonable application of, *Strickland*. The victim testified unequivocally that he recognized Petitioner as the perpetrator when he viewed the photo lineup. Furthermore, the victim's social security card was found in Petitioner's mother's vehicle. Thus, even had counsel objected to Detective Schafer's allegedly improper testimony, there is no reasonable probability that the jury would have found Petitioner not guilty. Accordingly, this claim is denied pursuant to § 2254(d).

### D.      Claim Four

 Petitioner asserts that trial counsel rendered ineffective assistance by failing to move to suppress his statement[6] to law enforcement in violation of *Miranda*. In support of his claim, Petitioner argues that, prior to receiving *Miranda* warnings, he made his statement during a custodial interrogation after Detective Schafer informed him that the victim and Huston had identified him as the perpetrator.

Petitioner raised this claim in his second Rule 3.850 motion, and the state court denied the claim pursuant to *Strickland*. (App. FF at 5-6.) The state court determined that counsel was deficient for failing to move to suppress Petitioner's statement because a motion to suppress likely would have been granted. *Id.* at 6. The state court concluded, however, that Petitioner had not demonstrated he was prejudiced based on counsel's

---

[6]Petitioner told detective Schafer that if the victim and Huston had identified him as the perpetrator, then he probably did it because he was high on drugs and could not remember.

failure to file a motion to suppress. *Id.* The state court reasoned that no reasonable probability existed that the outcome of the trial would have been different in light of the victim's and Huston's testimony. *Id.*

Pursuant to *Miranda*, "'evidence obtained as a result of a custodial interrogation is inadmissible unless the defendant had first been warned of his rights and knowingly waived those rights.'" *United States v. Sanders*, 315 F. App'x 819, 823 (11th Cir. 2009)(quoting *United States v. Parr*, 716 F.2d 796, 817 (11th Cir. 1983)). "'*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.'" *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Police "[o]fficers engage in the 'functional equivalent' of express questioning when they use 'any words or actions . . . (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Id.* (quoting *Innis*, 446 at 309 n. 5).

The Court concludes that the state court's denial of this claim is neither contrary to, nor an unreasonable application of, *Strickland*. As discussed *supra*, sufficient evidence was presented demonstrating Petitioner's guilt, including the victim's and Huston's testimony. In light of the evidence presented at trial, Petitioner has failed to demonstrate that a reasonable probability exists that the outcome of the trial would have been different even if counsel had filed a motion to suppress Petitioner's statement. Accordingly, this claim is denied pursuant to § 2254(d).

### E. Claim Five

Petitioner contends that trial counsel rendered ineffective assistance by failing to request the standard "accomplice testimony" jury instruction. Petitioner raised this claim in his second Rule 3.850 motion, and the state court denied it pursuant to *Strickland*. (App. FF at 6-7.)

The state court determined that defense counsel was arguably deficient for failing to request the accomplice instruction. *Id*. at 7. The state court noted that the accomplice jury instruction provides that the jury should use great caution when relying on the testimony of an accomplice, particularly when there is not other evidence implicating the defendant. *Id*. at 6. The state court reasoned, however, that the evidence presented at trial included the victim's testimony, and as such, "the importance of the accomplice instruction was diminished." *Id*. at 6-7. The state court further noted that the jury was given the standard jury instruction concerning evaluating the credibility of witnesses and weighing the evidence and defense counsel strenuously argued in closing argument regarding the instructions application to Huston's testimony. *Id*. at 7. The state court concluded, therefore, that Petitioner could not establish that he was prejudiced by counsel's failure to request the accomplice instruction. *Id*.

The record establishes that defense counsel failed to request the accomplice jury instruction. However, the jury was instructed that in weighing the evidence it should consider whether the witness (1) was honest, (2) had some interest in the case, (3) had been pressured to testify, and (4) had been convicted of a crime. (App. B at 124-25.) Thus, the

jury was instructed concerning how to determine the credibility of witnesses. Further, defense counsel argued that Huston had received a plea deal in return for his testimony and that Huston was a convicted felon. Finally, as noted above, the evidence against Petitioner also included the victim's testimony and the fact that the victim's social security card was found in Petitioner's mother's vehicle. As such, the Court concludes that the state court's determination that Petitioner failed to demonstrate that he was prejudiced by counsel's failure to request the accomplice instruction was an objectively unreasonable application of *Strickland*. Accordingly, claim five is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district

court was correct in its procedural ruling." *Id*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Scott B. Hersey is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 3rd day of June, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sc 6/3
Counsel of Record
Scott B. Hersey